## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**CHRISTOPHER ARMIJO,**

      **Applicant,**

**v.**                    **No.  CIV-07-0105 MCA/LAM**

**RICK LOONEY, WARDEN, et al.,**

      **Respondents.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS<br>AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

    1.    **THIS MATTER** is before the Court on Applicant Christopher Armijo's

***Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State***

***Custody*** (*Doc. 1*) (hereinafter, "Application"), filed on January 29, 2007.  The Court has considered

the parties' submissions and relevant law.[2]  For the reasons set forth below, the Court  recommends

that the Application be **DENIED** as without merit, and that this case be **DISMISSED WITH**

**PREJUDICE**.  Because the issues in this case can be resolved on the record before the Court, the

Court **FINDS** that an evidentiary hearing is unnecessary.[3]

---

[1]**Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within ten (10) days after being served with a copy of the objections.**

[2]In response to the Application, Respondents filed their ***Answer*** (*Doc. 12*) (hereinafter, "Answer"), on May 1, 2007.  In reply, Mr. Armijo filed his ***Reply in Opposition to the Respondents' Answer*** (***Doc. 12***) (*Doc. 16*) (hereinafter, "Reply"), on June 27, 2007.  On October 25, 2007 and November 21, 2007, Respondents supplemented their submissions with the record proper of Mr. Armijo's state criminal case pursuant to the Court's ***Order for Respondents to Submit State Court Records*** (*Doc. 19*), filed on October 1, 2007.

[3]*See Anderson v. Attorney General of Kansas*, 425 F.3d 853, 858-59 (10th Cir. 2005) (evidentiary hearing
(continued...)

2.      Mr. Armijo is incarcerated and proceeding *pro se*.  On January 29, 2007, he initiated this case by filing his Application seeking habeas relief pursuant to 28 U.S.C. § 2254.  Because he is a *pro se* litigant, the Court construes his Application liberally and holds it to a less stringent standard than pleadings drafted by an attorney.[4]

3.      The Court  liberally construes Mr. Armijo's Application as claiming that his federal constitutional rights were violated in his state criminal case because: (a) his trial attorney rendered ineffective assistance of counsel; (b) the prosecutor engaged in prosecutorial misconduct; (c) the trial court erred in allowing the jury to hear excerpts from a taped, out-of-court statement given by witness Travis Zabroski to the police; (d) the evidence at trial was insufficient to convict Mr. Armijo of the charge of conspiracy to commit armed robbery; (e) Mr. Armijo received two separate firearm enhancements in the same case, for armed robbery and aggravated assault with a deadly weapon, in violation of the double jeopardy clause of the Fifth Amendment; (f) he was punished twice for the same offense, in violation of the double jeopardy clause of the Fifth Amendment, because a required element of the aggravated assault with a deadly weapon offense was used to enhance his sentence for that offense; and (g) he was punished twice for the same offense, in violation of the double jeopardy clause of the Fifth Amendment, because a required element of the armed robbery offense was used to enhance his sentence for that offense.[5]  As relief, Mr. Armijo asks the Court to grant him, "such relief to which he may be entitled in this proceeding."[6]

---

[3](...continued)

unnecessary if § 2254 habeas claim can be resolved on the record).

[4]*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[5]*See* Application (*Doc. 1*) at pages numbered 6-10, and 14-16 in the Court's CM-ECF electronic docketing system.

[6]*Id.* at page numbered 13 in the Court's CM-ECF electronic docketing system.

4.      In several of his claims, Mr. Armijo cites the New Mexico Constitution as grounds for habeas relief.[7]   However, claims under state law are not cognizable in a federal habeas proceeding.  *See Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) ("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)."); *see also* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of *the Constitution or laws or treaties of the United State*s.") (emphasis added); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Therefore, the Court will not consider Mr. Armijo's claims under the New Mexico Constitution and will consider his claims as arising only under the U.S. Constitution.

5.      In their Answer to Mr. Armijo's Application, which is skeletal at best, Respondents: (a) deny that Mr. Armijo is entitled to federal habeas relief under 28 U.S.C. § 2254; (b) assert a procedural default defense as to "any issues raised on direct appeal and not pursued in a certiorari proceeding in the New Mexico Supreme Court as permitted by Rule 12-502 NMRA;" and (c) contend, pursuant to 28 U.S.C. § 2254(d), that Mr. Armijo has neither alleged nor established that proceedings in his state criminal case (i) resulted in a decision that was contrary to, or involved an unreasonable application of, federal law as determined by the United States Supreme Court, or (ii) resulted in a decision that was based on an unreasonable determination of the facts in light of the

---

[7]*See, e.g., id.* at pages numbered 9, 14-16 in the Court's CM-ECF electronic docketing system.

evidence presented in the state court proceeding.[8]  Additionally, without reference to specific factual determinations, Respondents assert that Mr. Armijo has not overcome the presumption of correctness applied to state court factual determinations pursuant to 28 U.S.C. § 2254(e)(1).[9] Respondents ask the Court to deny Mr. Armijo's Application and dismiss the Application with prejudice.[10]

## I. Exhaustion of State Court Remedies

6.      A state prisoner must generally exhaust available state court remedies before a federal court can consider the prisoner's habeas petition under 28 U.S.C. § 2254.[11]  The exhaustion requirement is considered satisfied "if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack."[12]  In their Answer, Respondents concede that Mr. Armijo has exhausted state court remedies with regard to all of his claims in this proceeding.[13]  The Court agrees that Mr. Armijo has exhausted his state court remedies.

---

[8]*See* Answer (*Doc. 12*) at ¶¶ 2, 5, 10.  Rule 12-502 N.M.R.A. is a New Mexico procedural rule governing petitions for the issuance of writs of certiorari seeking review by the New Mexico Supreme Court of decisions and actions of the New Mexico Court of Appeals.

[9]*See* Answer (*Doc. 12*) at ¶ 11.

[10]*Id.* at 5.

[11]*See* 28 U.S.C. § 2254(b)(1)(A); *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002).

[12]*Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

[13]*See* Answer (*Doc. 12*) at ¶ 4.

## II. Factual and Procedural Background

7.      The factual background of this case is summarized in the New Mexico Court of Appeals' decision on direct appeal.[14]   This case arose out of an incident in Albuquerque, New Mexico, on May 30, 2000.  During this incident, Mr. Armijo and Travis Zabroski, a minor, met David Brown in an alley behind a fast-food restaurant.  Mr. Brown was in his pick-up truck. Mr. Armijo stood by the driver's side of the truck and Mr. Zabroski got into the truck on the passenger side.  Mr. Brown was shot in the head and had marijuana stolen from him.  At Mr. Armijo's trial, Mr. Brown testified that Mr. Armijo struck him in the head with the butt of a gun.[15]  At Mr. Armijo's trial, there was disputed testimony as to the purpose of the meeting, who shot Mr. Brown and what occurred after the shooting.

8.      Mr. Armijo was charged with multiple criminal offenses in New Mexico state district court arising out of this incident and his case went to trial.  On July 18, 2002, pursuant to a jury verdict in state criminal case No. CR-2000-1882, Mr. Armijo was convicted of: (a) armed robbery (firearm enhancement); (b) conspiracy to commit armed robbery; (c) aggravated assault (deadly weapon) (firearm enhancement); (d) conspiracy to commit aggravated assault (deadly weapon); (e) tampering with evidence; (f) conspiracy to commit tampering with evidence; and (g) contributing to the delinquency of a minor.[16]  Mr. Armijo was represented at trial in his criminal case by attorney James  Baiamonte and the prosecutor in the criminal case was Donna Dagnall.[17]

---

[14]*See* Answer (*Doc. 12*), Exhibit P, at page numbered 8 of *Doc. 12-5* in the Court's CM-ECF electronic docketing system.

[15]*See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 133-134.

[16]*See* Answer (*Doc. 12*), Exhibit A, at pages numbered 1-2 of *Doc. 12-2* in the Court's CM-ECF electronic docketing system.                                        .

[17]*See* Transcript of Proceedings on July 15, 2002, in Case No. CR-00-1882 at 3.  The Court notes that
(continued...)

9.     On September 30, 2002, state district judge Richard Knowles entered a judgment, sentence and commitment in the criminal case in which he sentenced Mr. Armijo to a total of twenty-two and one-half years in prison, followed by two years of parole.[18]

10.     On December 16, 2002, state district judge Pat Murdoch entered a first amended judgment, sentence and commitment in the criminal case in which he corrected Mr. Armijo's sentence to a total of twenty-one and one-half years in prison, followed by two years of parole.[19]

11.     On October 2, 2002, Mr. Armijo filed a notice of appeal in the state district court giving notice of his appeal from his judgment, sentence and commitment to the New Mexico Court of Appeals.[20]  On the same date, Mr. Armijo filed an initial docketing statement with the Court of Appeals.[21]  In his initial docketing statement, Mr. Armijo asserted the following issues on appeal: (a) the State violated his constitutional right to a speedy trial; and (b) his convictions of aggravated assault, armed robbery, conspiracy to commit aggravated assault and conspiracy to commit armed robbery violated his constitutional right to be free from double jeopardy.[22]

---

[17](...continued)
Houston Ross is mistakenly listed as Mr. Armijo's trial attorney on the cover pages of the Transcripts of Proceedings on July 16, 17, and 18, 2002, in Case No. CR-00-1882.

[18]*See* Answer (*Doc. 12*), Exhibit A, at pages numbered 1-4 of *Doc. 12-2* in the Court's CM-ECF electronic docketing system.  This sentence was incorrect and should have been for a total of twenty-one and one-half years.

[19]*See* Answer (*Doc. 12*), Exhibit B, at pages numbered 5-8 of *Doc. 12-2* in the Court's CM-ECF electronic docketing system.

[20]*See* Answer (*Doc. 12*), Exhibit D, at page numbered 14 of *Doc. 12-2* in the Court's CM-ECF electronic docketing system.

[21]*See* Answer (*Doc. 12*), Exhibit E.

[22]*Id.* at pages 19-21 of *Doc. 12-2* in the Court's CM-ECF electronic docketing system.

12.     On February 19, 2003, the Court of Appeals issued a notice of proposed summary disposition, proposing to affirm the state court judgment in part and reverse it in part.[23]   On March 7, 2003, the State filed a memorandum in opposition to the proposed summary reversal.[24]

13.     On May 5, 2003, Mr. Armijo filed a motion to amend his docketing statement with the Court of Appeals.[25]   In that motion, Mr. Armijo, represented by new counsel, Houston Ross, asked to be allowed to amend his docketing statement to assert ineffective assistance of counsel and "perhaps other issues."[26]   A hand-written notation on that motion indicates that Mr. Armijo was granted an extension until June 6, 2003, to file "[a] memorandum in opposition and/or motion to amend docketing statement."[27]

14.     On or about July 7, 2003, Mr. Armijo filed an amended docketing statement with the Court of Appeals in which he incorporated the issues on appeal stated in his initial docketing statement and asserted the following additional issues on appeal: (a) whether the trial court erred by allowing the admission of testimony by Raymond Zabroski which was hearsay and should have been excluded; (b) whether the trial court erred by allowing the jury to hear a taped, out-of-court statement given by Travis Zabroski to the police which was hearsay and should have been excluded; (c) whether Mr. Armijo's trial attorney rendered ineffective assistance of counsel by (i) advising Mr. Armijo to turn down a plea offer that would have resulted in a much more favorable outcome

---

[23]*See* Answer (*Doc. 12*), Exhibit F, at pages numbered 22-28 of *Doc.12-2* in the Court's CM-ECF electronic docketing system.

[24]*See* Answer (*Doc. 12*), Exhibit G, at pages numbered 1-5 of *Doc.12-3* in the Court's CM-ECF electronic docketing system.

[25]*See* Answer (*Doc. 12*), Exhibit H, at page numbered 6 of *Doc. 12-3* in the Court's CM-ECF electronic docketing system.

[26]*Id.*

[27]*Id.*

than trial, (ii) allowing Mr. Armijo to testify at trial despite the danger that his testimony would support parts of the State's case, (iii) failing to properly object to Raymond Zabroski's hearsay testimony, and (iv) failing to properly object to the playing of Travis Zabroski's taped, out-of-court statement at trial.[28]

15.    On July 18, 2003, the Court of Appeals issued a second notice of proposed summary disposition and again proposed to affirm the state court judgment in part and reverse it in part.[29] The Court of Appeals construed Mr. Armijo's amended docketing statement as a memorandum in opposition to summary disposition of the appeal and also as a motion to amend Mr. Armijo's initial docketing statement.  The Court of Appeals denied the motion to amend for failing to state viable issues.[30]

16.    In ruling on Mr. Armijo's motion to amend his initial docketing statement, Judge Ira Robinson of the Court of Appeals held that Mr. Armijo's objections to Raymond Zabroski's testimony and Travis Zabroski's out-of-court, taped statement as hearsay, were not reviewable on appeal because these issues were not preserved at trial.[31]  Judge Robinson held that Mr. Armijo's ineffective assistance of counsel claims would be more appropriately raised in a habeas corpus proceeding.[32]

---

[28]*See* Answer (*Doc. 12*), Exhibit I, at pages numbered 7-9 of Doc. *12-3* in the Court's CM-ECF electronic docketing system.

[29]*See* Answer (*Doc. 12*), Exhibit J, at pages numbered 10-16 of *Doc. 12-3* in the Court's CM-ECF electronic docketing system.

[30]*Id.* at pages numbered 11-12 of *Doc. 12-3* in the Court's CM-ECF electronic docketing system.

[31]*Id*.

[32]*Id.* at page numbered 12 of *Doc.12-3* in the Court's CM-ECF electronic docketing system.

17.    On August 7, 2003, the State filed a second memorandum in opposition to the proposed summary reversal.[33]  On August 19, 2003, the New Mexico Court of Appeals assigned Mr. Armijo's appeal to its general calendar.[34]

18.    On January 20, 2004, Mr. Armijo filed his brief in chief with the Court of Appeals in which he argued that: (a) the evidence at trial was insufficient to support his convictions of tampering with evidence and conspiracy to tamper with evidence; (b) his convictions of both aggravated assault and conspiracy to commit aggravated assault violated his constitutional right to be free from double jeopardy; and (c) his convictions of both armed robbery and aggravated assault violated his constitutional right to be free from double jeopardy.[35]

19.    On December 3, 2004, the New Mexico Court of Appeals issued its opinion in Mr. Armijo's appeal.[36]  The Court of Appeals, in a unanimous three-judge decision, affirmed the district court's judgment, sentence and commitment, in part and reversed it in part.[37]  The Court of Appeals addressed all three issues briefed by Mr. Armijo and held that: (a) there was insufficient evidence to support Mr. Armijo's convictions of tampering with evidence and conspiracy to tamper with evidence; (b) his conviction of conspiracy to commit aggravated assault must be reversed because it was based upon the same agreement that formed the basis for his conviction of conspiracy to commit armed robbery in violation of his right to be free from double jeopardy; and (c) his

---

[33]*See* Answer (*Doc. 12*), Exhibit K, at pages numbered 17-27 of *Doc. 12-3* in the Court's CM-ECF electronic docketing system.

[34]*See* Answer (*Doc. 12*), Exhibit L, at pages numbered 28-29 of *Doc. 12-3* in the Court's CM-ECF electronic docketing system.

[35]*See* Answer (*Doc. 12*), Exhibit M, at pages numbered 1-9 of *Doc. 12-4* in the Court's CM-ECF electronic docketing system.

[36]*See* Answer (*Doc. 12*), Exhibit P, at pages numbered 7-29 of *Doc. 12-5* in the Court's CM-ECF electronic docketing system.

[37]*Id.*

convictions of both aggravated assault and armed robbery did not violate his right to be free from double jeopardy.[38]  Based on its holdings, the Court of Appeals reversed Mr. Armijo's convictions of tampering with evidence, conspiracy to tamper with evidence and conspiracy to commit aggravated assault, and affirmed the rest of his convictions.[39]

20.     Mr. Armijo did not file a petition for writ of certiorari to the New Mexico Supreme Court seeking review of the Court of Appeal's decision, and the Court of Appeals issued its mandate to the state district court on January 26, 2005.[40]

21.     On February 10, 2005, Mr. Armijo filed a pro se motion for reconsideration in the state district court asking the court to modify his sentence.[41]  Judge Knowles denied the motion in a form order filed on May 12, 2005.[42]

22.     On July 18, 2005, Judge Knowles entered a second amended judgment, sentence and commitment in the state criminal case in which he amended Mr. Armijo's sentence, in accordance with the mandate of the New Mexico Court of Appeals, to a total of seventeen years in prison, followed by two years of parole.[43]  In this judgment, sentence and commitment, Mr. Armijo was sentenced for his convictions of conspiracy to commit armed robbery, aggravated assault

---

[38]*Id.*

[39]*Id.* at pages numbered 21-22 of *Doc. 12-5* in the Court's CM-ECF electronic docketing system.

[40]*See* Answer (*Doc. 12*), Exhibit Q, at page numbered 23 of *Doc. 12-5* in the Court's CM-ECF electronic docketing system.

[41]*See* Answer (*Doc. 12*), Exhibit R, at pages numbered 24-27 of *Doc. 12-5* in the Court's CM-ECF electronic docketing system.

[42]*See* Answer (*Doc. 12*), Exhibit T, at page numbered 3 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[43]*See* Answer (*Doc. 12*), Exhibit C, at pages numbered 9-13 of *Doc. 12-2* in the Court's CM-ECF electronic docketing system.

(deadly weapon) (firearm enhancement), contributing to the delinquency of a minor and armed robbery (firearm enhancement).[44]

23.     On May 4, 2006, Mr. Armijo filed a pro se petition for writ of habeas corpus in the state district court.[45] His petition presented the following issues for consideration: (a) whether the evidence was insufficient to support his conviction of conspiracy to commit armed robbery; (b) whether his right to be free from double jeopardy was violated when he was sentenced for aggravated assault with a deadly weapon with a firearm enhancement; (c) whether his right to be free from double jeopardy was violated when he was sentenced for armed robbery with a firearm enhancement; (d) whether his right to be free from double jeopardy was violated when he was sentenced with two separate firearm enhancements (for aggravated assault with a deadly weapon and armed robbery) in the same case; (e) whether his trial attorney, James Baiamonte, rendered ineffective assistance of counsel by (i) suggesting that he not accept two plea offers, each of which would have resulted in a more favorable outcome than trial, (ii) failing to keep him reasonably informed of his case and depriving him of evidence, (iii) failing to investigate his case, (iv) failing to interview medical and mental examiners, (v) failing to re-examine victim David Brown after his memory improved, (vi) failing to do criminal background checks on witnesses, (vii) failing to call witnesses at trial, (viii) failing to get plea agreements of co-defendants and others, (ix) failing to suppress evidence of medical or mental examiners who dealt with David Brown, (x) failing to request a preliminary hearing to have a competency test done on David Brown, (xi) failing to object to prosecutorial misconduct during pre-trial proceedings and trial, (xii) failing to object to the admission of hearsay testimony, (xiii) failing to introduce extrinsic evidence for impeachment

_____

[44]*Id.*

[45]*See* Answer (*Doc. 12*), Exhibit U, at pages numbered 4-22 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

purposes, (xiv) failing to attack the credibility of state witnesses, (xv) failing to request, and object to, jury instructions, and (xvi) failing to appeal certain issues based on double jeopardy and insufficiency of the evidence; (f) whether the prosecutor engaged in prosecutorial misconduct during pre-trial proceedings and trial; (g) whether the trial court, the prosecution and his trial attorney erred in their respective parts in playing to the jury the taped, out-of-court statement of Travis Zabroski; and (h) whether his appellate attorney, Houston Ross, rendered ineffective assistance of counsel by (i) failing to abide by Mr. Armijo's decisions, (ii) failing to include all the grounds for appeal that Mr. Armijo requested in his direct appeal, (iii) refusing to appeal his direct appeal to a higher court, (iv) failing to provide Mr. Armijo with legal work and transcripts provided and/or paid for by Mr. Armijo, and (v) failing to file a motion for reconsideration for Mr. Armijo after verbally agreeing to do so.[46]

24.    On September 5, 2006, Judge Murdoch entered an order denying Mr. Armijo's state habeas petition.[47]   In his order, Judge Murdoch noted, *inter alia*, that the performance of Mr. Armijo's attorney in his case "rises to the level of competency required for these types of cases and counsel <u>did</u> <u>give</u> effective representation."[48]

25.    On October 2, 2006, Mr. Armijo filed a petition for a writ of certiorari with the New Mexico Supreme Court seeking review of the denial of his state habeas petition.[49]   The petition presented the following issues for review: (a) whether Judge Murdoch erred in denying Mr. Armijo's petition and allegedly addressing two issues that Mr. Armijo did not raise in the petition and

---

[46]*Id.* at pages numbered 9-22 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[47]*See* Answer (*Doc. 12*), Exhibit V, at pages numbered 23-24 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[48]*Id.* at page numbered 24 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[49]*See* Answer (*Doc. 12*), Exhibit W, at pages numbered 1-9 of *Doc. 12-7* in the Court's CM-ECF electronic docketing system.

mentioning only one of nine issues that he did raise in the petition; (b) whether Judge Murdoch erred in ruling that Mr. Armijo's convictions of aggravated assault and conspiracy to commit that crime did not constitute double jeopardy when Mr. Armijo's conviction of conspiracy to commit aggravated assault had already been overturned by the Court of Appeals; (c) whether Judge Murdoch erred in ruling that Mr. Armijo's convictions of armed robbery and aggravated assault did not constitute double jeopardy when he was not contesting that issue anymore; (d) whether the evidence was insufficient to support his conviction of conspiracy to commit armed robbery; (e) whether his right to be free of double jeopardy was violated when he was sentenced for both aggravated assault with a deadly weapon and a firearm enhancement; (f) whether his right to be free of double jeopardy was violated when he was sentenced for both armed robbery and a firearm enhancement; (g) whether his right to be free of double jeopardy was violated when he was sentenced with two separate firearm enhancements; (h) whether his trial attorney rendered ineffective assistance of counsel; (i) whether the prosecutor in his criminal case engaged in prosecutorial misconduct; (j) whether the trial court erred in allowing the jury to hear the out-of-court, taped statement of Travis Zabroski; and (k) whether his appellate attorney rendered ineffective assistance of counsel.[50]

26.     On October 16, 2006, the New Mexico Supreme Court ordered the State to file a response addressing a single issue raised in Mr. Armijo's petition for a writ of certiorari.[51]   That issue was whether Mr. Armijo's right to be free from double jeopardy was violated by the firearm enhancement of his sentence for armed robbery.[52]   The State filed its response on October 30,

---

[50]*Id.* at pages numbered 2, 4 and 6-9 of *Doc. 12-7* in the Court's CM-ECF electronic docketing system.

[51]*See* Answer (*Doc. 12*), Exhibit X.

[52]*Id.*

2006.[53]        27.        On November 8, 2006, without issuing an opinion, the New Mexico Supreme Court entered an order summarily denying Mr. Armijo's petition for writ of certiorari.[54] Mr. Armijo did not seek review of this decision by the United States Supreme Court.

28.        On January 29, 2007, Mr. Armijo filed his Application for federal habeas relief in this Court, initiating this proceeding.[55]   His Application was timely filed pursuant to 28 U.S.C. § 2244(d).

### III.  Claims for Habeas Corpus Relief

### A.  Standards of Review

29.        The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996[56] (hereinafter, "AEDPA"), govern this case.[57] The Court cannot grant Mr. Armijo habeas relief pursuant to 28 U.S.C. § 2254(d), unless the decision in his state court proceeding (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)-(2).  The United States Supreme Court has construed these

---

[53]*See* Answer (*Doc. 12*), Exhibit Y, at pages numbered 2-7 of *Doc. 12-8* in the Court's CM-ECF electronic docketing system.

[54]*See* Answer (*Doc. 12*), Exhibit Z, at page numbered 8 of *Doc. 12-8* in the Court's CM-ECF electronic docketing system.

[55]*See* Application (*Doc. 1*).

[56]110 Stat. 1214.

[57]The standards in AEDPA apply to this case because the Application was filed after the effective date of AEDPA which was April 24, 1996.  *See Upchurch v. Bruce*, 333 F.3d 1158, 1162 (10th Cir. 2003).

statutory provisions, and established rules for applying them, in a series of cases decided since the enactment of AEDPA.[58]

30.     The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

31.     Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams v. Taylor*, 529 U.S. at 413.  A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions . . . .  [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).  *See also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting presumption that state courts know and follow the law); *Miller v. Mullin*, 354 F.3d 1288, 1292-1293 (10th Cir. 2004) (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law). Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply.  So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting

---

[58]*See, e.g., Wright v. Van Patten*, ___ U.S. ___, 128 S.Ct. 743 (2008); *Fry v. Pliler*, ___ U.S. ___, 127 S.Ct. 2321 (2007); *Bell v. Cone*, 543 U.S. 447 (2005) (*per curiam*); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (*per curiam*); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (*per curiam*); *Early v. Packer*, 537 U.S. 3 (2002) (*per curiam*); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000).

the "decision."[59]  Moreover, if a state court's decision does not conflict with the  reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. at 17.  If a state court decides a claim on the merits in summary fashion, the AEDPA standards still apply, but the focus is on the state court's results rather than any reasoning.  *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006).

32.    Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent  if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. at 413.  However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. at 75-76 (internal quotations and citations omitted).  "Rather, that application must be objectively unreasonable." *Id.* at 76.  A state court cannot be said to have "unreasonabl[y] appli[ed] clearly established Federal law," under 28 U.S.C. § 2254(d)(1), if no Supreme Court decision provides a clear answer to a question presented in the state court.  *See Wright v. Van Patten*, ___ U.S. ___, ___, 128 S.Ct. 743, 747 (2008) (citing *Carey v. Musladin*, 549 U.S. ___, ___, 127 S.Ct. 649, 654 (2006)).

---

[59]*See Cook v. McKune*, 323 F.3d 825, 830-831 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision); *compare Morris v. Burnett*, 319 F.3d 1254, 1267 (10th Cir. 2003) ("[w]hen the state court addresses the great bulk of the issues raised by the petitioner's brief in that court but omits to address a particular claim, we have inferred that the claim was not decided 'on the merits' in the state court . . . [and,] [t]herefore, we do not apply the deferential review set forth in 28 U.S.C. § 2254(d) with  respect to that claim.").

33.     Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect. *See Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

34.     The deferential AEDPA standard of review applies to habeas claims that were adjudicated on the merits in state court proceedings. *See* 28 U.S.C. § 2254(d).  If the state court did not adjudicate a claim on the merits, and the claim is not otherwise procedurally barred, a federal court reviews the claim *de novo* under the pre-AEDPA standard of review.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999)). Under the pre-AEDPA standard of review, a state court's findings of fact are afforded a presumption of correctness and both legal conclusions and mixed questions of law and fact are reviewed *de novo*. *See Castro v. Ward*, 138 F.3d 810, 815-816 (10th Cir. 1998).  "[T]he presumption of correctness will continue to apply to any findings of fact underlying mixed questions."  *Id.* at 816 (quoting *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir. 1989)).  See *also* 2 Randy Hertz and James S. Liebman, Federal Habeas Corpus Practice and Procedure, § 32.1, at 1565 (5th ed. 2005) (if § 2254 habeas claim was not adjudicated on the merits, federal court must employ pre-AEDPA standard of *de novo* review of legal and mixed legal-factual rulings).

## B.  Analysis

35.     Subject to the foregoing standards, the Court considers Mr. Armijo's claims in this proceeding.

### *1. Procedural Default*

36.     In their Answer, Respondents assert that Plaintiff "may" have procedurally defaulted any issues raised on direct appeal that were not pursued in a certiorari proceeding in the New Mexico Supreme Court as permitted by Rule 12-502, N.M.R.A.[60] Rule 12-502, N.M.R.A., is a New Mexico procedural rule that governs petitions for the issuance of writs of certiorari seeking review of decisions and actions of the New Mexico Court of Appeals by the New Mexico Supreme Court.

37.     The record shows that Plaintiff briefed only three issues in his brief-in-chief on direct appeal to the New Mexico Court of Appeals.  These issues were: (1) whether the evidence at trial was insufficient to support his convictions of tampering with evidence and conspiracy to tamper with evidence; (2) whether his convictions of both aggravated assault and conspiracy to commit aggravated assault violated his right to be free from double jeopardy; and (3) whether his convictions of both armed robbery and aggravated assault violated his right to be free from double jeopardy.[61] As noted above, the New Mexico Court of Appeals reversed Mr. Armijo's convictions of tampering with evidence, conspiracy to tamper with evidence and conspiracy to commit aggravated assault, and affirmed his remaining convictions of armed robbery, conspiracy to commit armed robbery, aggravated assault and contributing to the delinquency of a minor.[62]

38.     Although Mr. Armijo could have sought review of the Court of Appeals' decision by the New Mexico Supreme Court, by filing a petition for the issuance of a writ of certiorari pursuant to Rule 12-502, N.M.R.A., he failed to do so.  However, the only issue that he could have raised in a petition for a writ of certiorari was the issue on which he lost at the Court of Appeals, *i.e.*,

---

[60]*See* Answer (*Doc. 12*) at ¶ 5.

[61]*See* Answer (*Doc. 12*), Exhibit M, at pages numbered 1-8 of *Doc. 12-4* in the Court's CM-ECF electronic docketing system.

[62]*See* Answer (*Doc. 12*), Exhibit P, at pages numbered 7-22 of *Doc. 12-5* in the Court's CM-ECF electronic docketing system.

the issue of whether his convictions of both armed robbery and aggravated assault violated his right to be free from double jeopardy.  Thus, Respondents' assertion of procedural default in this proceeding extends to only that issue because it was the only issue that Mr. Armijo could have pursued in a certiorari proceeding in the New Mexico Supreme Court.

39.    In this case, Mr. Armijo has not asserted a claim that his convictions of both armed robbery and aggravated assault violated his right to be free from double jeopardy.  Instead, he has asserted a claim that his two firearm enhancement sentences on the armed robbery and aggravated assault convictions violated his right to be free from double jeopardy,[63] which is quite different. Consequently, the Court finds that Respondents' procedural default argument has no merit with regard to Mr. Armijo's state court claim that his convictions of armed robbery and aggravated assault violated double jeopardy because there is no such claim in this federal proceeding to be procedurally defaulted.

40.    Moreover, the Court finds no procedural default with regard to Mr. Armijo's claim that his two firearm enhancement sentences on the armed robbery and aggravated assault convictions violated his right to be free from double jeopardy.  Mr. Armijo raised this claim in his state habeas corpus proceeding, asserting that his right to be free of double jeopardy was violated when he received two separate firearm enhancement sentences for the crimes of armed robbery and aggravated assault.[64]  In ruling on Mr. Armijo's state habeas petition, the state district court did not

---

[63]This claim is asserted in Mr. Armijo's Application (*Doc. 1*) at page numbered 15 in the Court's CM-ECF electronic docketing system.

[64]*See* Answer (*Doc. 12*), Exhibit U, at page numbered 12 of *Doc.12-6* in the Court's CM-ECF electronic docketing system.

rely on any procedural default in denying this claim.  Instead, it entertained the claim and summarily denied it on the merits.[65]

41.     A federal habeas court "may not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'"  *Medlock v. Ward*, 200 F.3d 1314, 1323 (10th Cir. 2000), quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir.1998).  However, for a state procedural rule to constitute an "independent" ground for federal habeas purposes, the state courts must enforce the default.  Thus, a federal court cannot decline to address a habeas claim if the state courts, in ruling on that claim, decided the claim on the merits.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).[66]

42.     Because the state district judge, in ruling on Mr. Armijo's state habeas petition, failed to rely on a state procedural ground to deny Mr. Armijo's claim that his firearm enhanced sentences for both armed robbery and aggravated assault with a deadly weapon violated his right to be free of double jeopardy and, instead, decided that claim on the merits, the Court finds the "independent" ground requirement is not met for federal habeas purposes with regard to that claim and there can be no procedural default.  Therefore, the Court can consider that claim in this proceeding.

---

[65]*See* Answer (*Doc. 12*), Exhibit V, at page numbered 24 of *Doc.12-6* in the Court's CM-ECF electronic docketing system.

[66]*See also English v. Cody*, 146 F.3d at 1259 ("A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision."); *Jackson v. Shanks*, 143 F.3d 1313, 1319 (10th Cir. 1998) ("Although the state argues that Mr. Jackson's claim of ineffective assistance is nevertheless barred because he failed to raise the issue in his first state habeas petition . . . , the state court's denial of his second state habeas petition was not based on that procedural ground.  We are not inclined to rely on a state procedural rule that the New Mexico courts did not rely upon."); *Vernon v. Williams*, No. 98-2070, 2000 WL 286157, at *3 (10th Cir. Mar. 17, 2000) (unpublished) (ambiguous state ruling that could have been construed as being decided on procedural ground and alternatively on merits found not "independent"); compare *Lopez v. Williams*, 59 Fed. App'x 307, 311 (10th Cir. 2003) (unpublished) ("Here, the state court summarily rejected Lopez's federal claim because he failed to satisfy an independent state predicate - he did not preserve the issue at trial.  The state court's preservation requirement, a non-merits predicate to its rejection of Lopez's federal claim, is plainly an independent state ground that implicates procedural-bar principles on federal habeas.").

## 2.  *Ineffective Assistance of Counsel*

43.    Mr. Armijo appears to contend that he was denied constitutionally effective assistance of counsel because his trial attorney: (a) failed to interview unspecified medical examiners, mental examiners and ballistic experts, whose testimony (i) could have proved that the incident resulting in Mr. Armijo's conviction happened as he said it did, that Mr. Armijo did not strike or shoot Mr. Brown with a gun, and that an unspecified witness[67] was incompetent to testify, and (ii) could have explained unspecified medical records that were given to the jury; (b) failed to object to the prosecution's misconduct before and during trial which is described in Mr. Armijo's second claim for relief; (c) failed to object to the prejudicial hearsay testimony of witnesses Stephen Bieniek and Raymond Zabroski during Mr. Armijo's trial, even when the court brought such testimony to the attorney's attention;[68] (d) failed to impeach "an [unidentified] additional witness",[69] and witnesses Stephen Bieniek and Raymond Zabroski,  with their prior, inconsistent statements; (e) agreed that a prejudicial out-of-court taped statement, made by Travis Zabroski, could be played at Mr. Armijo's trial; (f) made reference to Travis Zabroski's out-of-court taped statement during closing argument, making it seem as if the statement was evidence when it was not; (g) failed to request a jury instruction, instructing the jury that the out-of-court taped statement of Travis

---

[67]This may be a reference to victim David Brown, since Mr. Armijo argued in his state habeas petition that his attorney was ineffective for failing to request a competency hearing for Mr. Brown to see if he was able to testify accurately.  *See* Answer (*Doc. 12*), Exhibit U, at page numbered 13 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.  However, the Court cannot determine with any certainty if this is a reference to Mr. Brown.

[68]In his Application, Mr. Armijo describes these witnesses as "the lead detective" and "my alle[]ged accomplice[']s father."  Application (*Doc. 1*) at page numbered 14 in Court's CM-ECF electronic docketing system. However, it is obvious from the transcript of Mr. Armijo's trial that these witnesses are Albuquerque police detective Stephen Bieniek and Raymond Zabroski, the father of Travis Zabroski.  *See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 8-40, 79-92.

[69]This may be a reference to victim David Brown, given that Mr. Armijo argued in his state habeas petition that his attorney was ineffective for failing to impeach Mr. Brown with unspecified "extrinsic evidence."  *See* Answer (*Doc. 12*), Exhibit U, at page numbered 14 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system. However, the Court cannot determine with any certainty if this is a reference to Mr. Brown.

Zabroski was not evidence; and (h) failed to object to an unspecified jury instruction for being improper and wrongly altered.[70]

44.     In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by the two-prong standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance claim under the *Strickland* standard, Mr. Armijo must show that (a) his attorney's performance fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance.[71]   Both showings must be made to satisfy the *Strickland* standard.[72]  To demonstrate unreasonable performance, Mr. Armijo must show that his attorney "made errors so serious" that his performance could not be considered "reasonable[ ] under prevailing professional norms."[73]  Moreover, a showing of unreasonable performance requires that Mr. Armijo overcome the strong presumption that his attorney's conduct was within the wide range of reasonable professional assistance.[74]  To demonstrate prejudice, Mr. Armijo must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors.[75]  The Court does not have to address both

---

[70]*See* Application (*Doc. 1*) at pages numbered 6-14 in the Court's CM-ECF electronic docketing system.

[71]*Strickland v. Washington*, 466 U.S. 687-88.

[72]*Id.* at 687.

[73]*Id.* at 687-88.

[74]*Id.* at 689.

[75]*Id.* at 694.

prongs of the *Strickland* standard if Mr. Armijo makes an insufficient showing on one of the prongs.[76]

45.    Applying the *Strickland* standard to Mr. Armijo's ineffective assistance of counsel claims, the Court finds no merit to the claims.

### a.   *Failure to Interview Unspecified Medical Examiners, Mental Examiners and Ballistic Experts*

46.    Mr. Armijo's claim that his attorney rendered ineffective assistance of counsel by failing to interview unspecified medical examiners, mental examiners and ballistic experts, is conclusory and unsupported.  In his Application, Mr. Armijo fails to identify these examiners and experts, and provides no specifics as to how their interviews would have altered the outcome of his trial.[77]  Although a pro se litigant's pleadings are liberally construed, Mr. Armijo is not relieved of the burden of alleging sufficient facts on which a recognized legal claim can be based and conclusory allegations will not suffice.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim); *see also Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) ("[N]aked allegations" are not cognizable under 28 U.S.C. § 2254).  Because this ineffective assistance of counsel claim consists entirely of conclusory and unsupported allegations, it should be denied.

---

[76]*Id.* at 697.

[77]*See* Application (*Doc. 1*) at page numbered 6 in the Court's CM-ECF electronic docketing system. Mr. Armijo made similar conclusory claims in his state habeas petition that were summarily denied.  *See* Answer (*Doc. 12*), Exhibit U, at pages numbered 13 and 18, and Exhibit V, at page numbered 24, respectively, of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

### b. _Failure to Object to Prosecutorial Misconduct_

47.     Mr. Armijo asserts that his trial attorney was ineffective because he failed to object to the prosecution's misconduct before and during trial.[78]  Mr. Armijo refers to his prosecutorial misconduct claim for the instances of prosecutorial misconduct that he contends his attorney should have objected to.[79]  Mr. Armijo made a similar ineffective assistance of counsel claim in his state habeas petition that was summarily denied.[80]

48.     Before assessing whether Mr. Armijo's defense attorney was constitutionally ineffective for failing to object to prosecutorial misconduct, the Court must first determine whether the prosecution committed misconduct.  _See Washington v. Hofbauer_, 228 F.3d 689, 699 (6th Cir. 2000).  For the reasons set forth below, in the discussion of Mr. Armijo's prosecutorial misconduct claim at paragraphs 67-72 herein, the Court finds that Mr. Armijo's prosecutorial misconduct claim has no merit.  Therefore, the Court finds that this ineffective assistance of counsel claim has no merit.

### c. _Failure to Object to Prejudicial Hearsay Testimony of Witnesses Stephen Bieniek and Raymond Zabroski_

49.     Mr. Armijo contends that his attorney rendered ineffective assistance by failing to object to prejudicial hearsay testimony given by the witnesses Stephen Bieniek and Raymond Zabroski, even when the trial judge brought such testimony to the attorney's attention.[81]

---

[78]_See_ Application (_Doc. 1_) at 6.

[79]_Id._

[80]_See_ Answer (_Doc. 12_), Exhibits U and V, at pages numbered 13-16 and 24, respectively, of _Doc. 12-6_ in the Court's CM-ECF electronic docketing system.

[81]_See_ Application (_Doc. 1_) at page numbered 14 in the Court's CM-ECF electronic docketing system. Although Mr. Armijo describes these witnesses in his Application (_Doc. 1_) as "the lead detective" and "my alle[]ged accomplice[']s father[,]" it is obvious from the transcript of Mr. Armijo's trial that these witnesses are Albuquerque police detective Stephen Bieniek and Raymond Zabroski, the father of Travis Zabroski.  _See_ Transcript of Proceedings

(continued...)

Mr. Armijo contends that neither of these witnesses was at the scene of the crime and they never heard him speak of the incident.[82]  Mr. Armijo asserted a similar claim in his state habeas petition, which was summarily denied.[83]

50.     In his Application in this proceeding, Mr. Armijo fails to specify which testimony of Officer Bieniek and Raymond Zabroski his attorney should have objected to as hearsay.  Nor does Mr. Armijo describe with any particularity how his attorney's failure to object to such testimony prejudiced Mr. Armijo in his state case.  In his state habeas petition, Mr. Armijo argued that hearsay testimony by these witnesses gave the jury a story about the shooting incident, including a motive and a plan, and a description of what happened both during and after the incident.[84]  However, in his state habeas petition, Mr. Armijo also failed to identify the specific testimony at issue.

51.     The Court acknowledges that at one point during Officer Bieniek's direct testimony, the trial judge called a bench conference and noted that "a lot of hearsay" was coming in, to which Mr. Armijo's attorney responded, "I don't mind it because it's going to come in under Zabroski anyway."[85]  However, the Court finds itself unable to analyze Mr. Armijo's ineffective assistance claim based on a failure to object to hearsay without knowing which particular testimony of Officer Bieniek and Raymond Zabroski is at issue.  Together, the testimony of Officer Bieniek and

---

[81](...continued)
on July 16, 2002, in Case No. CR-00-1882 at 8-40, 79-92.

[82]*See* Application (*Doc. 1*) at page numbered 14 in the Court's CM-ECF electronic docketing system.

[83]*See* Answer (*Doc. 12*), Exhibit U, at pages numbered 14-15 and 17, and Exhibit V, at page numbered 24, respectively, of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[84]*See* Answer (*Doc. 12*), Exhibit U, at pages numbered 14-15 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[85]*See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 22-23.  It is not clear whether Mr. Armijo's attorney intended this as a reference to witness Travis Zabroski or to his father, witness Raymond Zabroski.

Raymond Zabroski comprise forty-seven pages of trial transcript in the *Record*.[86]  Without more specific references to that testimony, the Court would have to search the testimony in its entirety, looking for possible hearsay and then analyze, with reference to each instance of possible hearsay, whether Mr. Armijo's attorney was deficient in failing to object to the testimony and whether Mr. Armijo was prejudiced by his attorney's failure to object.

52.     The Court is not Mr. Armijo's advocate and it is not the Court's role to sort through the testimony of these witnesses looking for error in order to construct Mr. Armijo's claim.  *See Hall v. Bellmon*, 935 F.2d at 1110; *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (although *pro se* petitions must be liberally construed, court is "not required to fashion [a petitioner's] arguments for him where his allegations are merely conclusory in nature without supporting factual averments").  Moreover, the Court is not required to search the record looking for testimony that Mr. Armijo's attorney might have objected to on grounds of hearsay.  *Cf. Adams v. Dyer*, 223 Fed. App'x 757, 762 n.4 (10th Cir. 2007) (unpublished) ("It is not the job of this court to search the record (or public documents) for evidence to support defendants' position. Judges are not like prospectors, searching tirelessly for a glitter of relevant evidence in the towering mountain of documents that might have relevance to the case.").  Consequently, the Court finds the allegations in this claim too conclusory for a determination on the merits and, therefore, this claim should be denied.

---

[86]*See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 8-40 and 79-92.

### d. *Failure to Impeach Unidentified Witness and Witnesses Stephen Bieniek and Raymond Zabroski With Their Prior, Inconsistent Statements*

53.     Mr. Armijo asserts that his trial counsel was ineffective in failing to impeach an unidentified witness and witnesses Stephen Bieniek and Raymond Zabroski with their prior, inconsistent statements.[87]  In his Application, Mr. Armijo fails to identify the third witness, and fails to specify which prior inconsistent statements made by any of these three witnesses could have been used to impeach them at trial.  Even construing this claim by Mr. Armijo liberally, the undersigned finds his allegations too conclusory and unsupported to warrant federal habeas relief.  Therefore, this claim should be denied.

### e. *Agreement That Out-of-Court Taped Statement of Travis Zabroski Could Be Played at Trial*

54.     Next, Mr. Armijo contends that his trial attorney was ineffective because he agreed that excerpts from an out-of-court taped statement of Travis Zabroski could be played at Mr. Armijo's trial to impeach Mr. Zabroski with prior inconsistent statements.[88]  The taped statement of Mr. Zabroski was given to law enforcement officers on May 31, 2000, the day after David Brown was shot.[89]  Mr. Armijo appears to contend that his attorney should have objected to the playing of excerpts from the tape because the excerpts from the tape prejudiced Mr. Armijo, and because the probative value of the excerpts played to the jury were outweighed by their prejudicial

---

[87]*See* Application (*Doc. 1*) at page numbered 14 in the Court's CM-ECF electronic docketing system. Mr. Armijo made similar conclusory allegations in his state habeas petition.  *See* Answer (*Doc. 12*), Exhibit U, at page numbered 14 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[88]*See* Application (*Doc. 1*) at page numbered 14 in the Court's CM-ECF electronic docketing system.

[89]*See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 95, 124.

effect.[90]  Additionally, he appears to contend that his attorney should have objected to the playing

of excerpts from the tape because they were admitted on an improper ground, *i.e.*, to impeach Mr.

Zabroski for his lack of memory and for inconsistencies between what he told his father, brother and

police about the shooting and what he remembered saying on the tape.[91]  Mr. Armijo fails to specify

how he was prejudiced by the playing of excerpts from the tape at trial.[92]  Mr. Armijo made similar

arguments in his state habeas petition, arguing that his attorney should have objected to playing the

tape because it was prejudicial and admitted on an improper ground.[93]  In his state habeas petition,

Mr. Armijo argued that the prejudice he suffered from the tape being played was being convicted

of tampering with evidence and conspiracy to tamper with evidence, convictions that were reversed

by the New Mexico Court of Appeals on direct appeal.[94]

     55.     The *Record* shows that during Travis Zabroski's testimony as a prosecution witness,[95]

the State impeached him with prior inconsistent statements on the tape.[96]  Mr. Armijo's attorney

stipulated to the foundation of the tape but before it was played he renewed an earlier objection to

the tape that appears to have been overruled.[97]  His earlier objection was on the ground that

Mr. Zabroski's testimony was not inconsistent, but rather was testimony that he did not remember

---

[90]*See* Application (*Doc. 1*) at pages numbered 9 and 14 in the Court's CM-ECF electronic docketing system.

[91]*Id.* at page numbered 9 in the Court's CM-ECF electronic docketing system.

[92]*Id.* at pages numbered 9 and 14 in the Court's CM-ECF electronic docketing system.

[93]*See* Answer (*Doc. 12*), Exhibit U, at page numbered 21 of *Doc.12-6* in the Court's CM-ECF electronic docketing system.

[94]*Id.*; *see also* Answer (*Doc. 12*), Exhibit P, at page numbered 21 of *Doc.12-5* in the Court's CM-ECF electronic docketing system.

[95]*See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 94-109, 119-120.

[96]*Id.* at 123-127.

[97]*Id.* at 123-124.

events he was asked about by the prosecution.[98]  Although excerpts from the tape were played to the jury to impeach Mr. Zabroski, the tape itself was not admitted as substantive evidence and it is not part of the *Record* before the Court.

56.     The Court finds no merit to this ineffective assistance claim by Mr. Armijo because he has made no showing of prejudice with regard to this claim.  To establish prejudice under the *Strickland* standard, Mr. Armijo must demonstrate that his attorney's performance was so prejudicial "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  The burden of proving prejudice rests with Mr. Armijo.  *See Brecheen v. Reynolds*, 41 F.3d 1343, 1365 (10th Cir. 1994).  Mr. Armijo's allegations that he was prejudiced by his attorney's failure to assert additional objections to the playing of excerpts from Mr. Zabroski's taped statement are conclusory and offer no specifics as to how additional objections by his attorney, if they had been made, would have altered the outcome of Mr. Armijo's trial.  Conclusory allegations are not sufficient to satisfy the prejudice prong of the *Strickland* standard.  *See Stafford v. Saffle*, 34 F.3d 1557, 1564-65 (10th Cir. 1994) (vague and conclusory evidence insufficient to satisfy prejudice prong of *Strickland*); *United States v. Mealy*, 851 F.2d 890, 908 (7th Cir. 1988) (conclusory allegations cannot satisfy prejudice prong of *Strickland*); *see also Hall v. Bellmon*, 935 F.2d at 1110 (even pro se petitioners must allege sufficient facts on which a recognized legal claim can be based and conclusory allegations will not suffice).  Because the allegations of this claim are insufficient with regard to a showing of prejudice, this claim should be denied.

---

[98]*Id.* at 102-103.

### *f.   Making Reference to Travis Zabroski's Out-of-Court Taped Statement During Closing Argument*

57.    Mr. Armijo also argues that his attorney was ineffective because he referred to Travis Zabroski's out-of-court taped statement during closing argument which made it seem as if the statement was evidence when it was not.[99] Mr. Armijo made a similar claim in his state habeas petition which was summarily denied.[100]

58.    The transcript of Mr. Armijo's trial shows that his attorney made two brief references to the taped statement during his closing argument.  In the first reference, the attorney referred to a statement on the tape by Travis Zabroski that he shot David Brown.[101] This reference was made to support the attorney's argument that Travis Zabroski consistently admitted that he shot David Brown and that he, meaning Travis Zabroski, was "the bad guy here."[102] In the second reference, the attorney referred to a statement on the tape by Travis Zabroski that David Brown turned in his seat in the truck, apparently before he was shot.[103] The attorney made this reference to support his version of events on the night of the shooting that Travis Zabroski shot David Brown in the forehead when Brown turned in the seat in his truck and bent over to retrieve marijuana.[104]

59.    The Court finds that Mr. Armijo has made no showing of prejudice with regard to this ineffective assistance claim.  The two brief references to Travis Zabroski's taped statement by Mr. Amijo's attorney in closing argument were made to support arguments that Travis Zabroski, not

---

[99]*See* Application (*Doc. 1*) at page numbered 14 in the Court's CM-ECF electronic docketing system.

[100]*See* Answer (*Doc. 12*), Exhibit U, at page numbered 14 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[101]*See* Transcript of Proceedings on July 17, 2002, in Case No. CR-00-1882 at 32.

[102]*Id.*

[103]*Id.* at 37.

[104]*Id.* at 37-38.

Mr. Armijo, shot David Brown.  Moreover, any prejudice from these references was obviated by the Court's verbal instruction to the jury, before closing arguments were made, that the arguments of counsel were not evidence but argument on the case.[105]  Therefore, the Court finds that this claim fails the second prong of the *Strickland* case, which requires a showing of prejudice.

### g.  *Failure to Request a Limiting Instruction for Travis Zabroski Statement*

60.    Mr. Armijo contends that his attorney rendered ineffective assistance of counsel by failing to request a  limiting instruction to instruct the jury that the out-of-court taped statement of Travis Zabroski, played at trial, was not evidence.[106]  Mr. Armijo made a similar claim in his state habeas proceeding, arguing that his attorney was ineffective because he failed to request New Mexico Uniform Criminal Jury Instruction No. 14-5009 (hereinafter, "UJI 14-5009"), to help the jury understand that the taped statement "was not to be used for making their decision."[107]  At the time of Mr. Armijo's trial, UJI 14-5009 was a general limiting instruction, which instructed the jury that evidence was admitted for a limited purpose.[108]  The Court finds no merit to this claim.

---

[105]The trial court gave the jury this verbal instruction: "Now the lawyers will argue the case.  What is said in the arguments is not evidence.  It is an opportunity for the lawyers to discuss the evidence and the law as I have instructed you."  *Id.* at 23.

[106]*See* Application (*Doc. 1*) at page numbered 14 in the Court's CM-ECF electronic docketing system.

[107]*See* Answer (*Doc. 12*), Exhibit U, at page numbered 14 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[108]The text of UJI 14-5009 (2002) and its use note state, in relevant part, that:

> Evidence concerning _____ (*facts*) was admitted for the limited purpose of _____ (*proof*).

> [At the time this evidence was admitted, you were admonished that it could not be considered for any other purpose.] [FN2]

> You are [again] [FN2] instructed that you must not consider such evidence for any purpose other than _____ (*proof*).

(continued...)

31

61.     At Mr. Armijo's trial, Travis Zabroski testified as a hostile witness for the State.[109] He testified about the incident that gave rise to the charges against Mr. Armijo.[110]  During his testimony, the State impeached Mr. Zabroski with prior inconsistent statements that he made to law enforcement officers in his tape-recorded statement, given on May 31, 2000, that implicated Mr. Armijo.[111]  The trial judge allowed the prosecutor to play excerpts of Mr. Zabroski's tape-recorded statement to the jury for impeachment purposes, but the tape-recording was not admitted as substantive evidence and it was not given to the jury to consider during deliberations.[112]  Before the excerpts from the tape-recording were played, the judge orally instructed the jury that the tape-

---

[108](...continued)

USE NOTE

[FN1]  Upon request, the court must instruct the jury that evidence is admitted for a limited purpose.  This is a general instruction.  For special instructions, see UJI 14-5010, 14-5022, 14-5028, 14-5034, and 14-5035.

[FN2]  Use only if jury was admonished at the time the evidence was admitted.

[109]See Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 98-99.

[110]Id. at 94-120.

[111]Id. at 123-127.

[112]Id. at 124-127; see also Transcript of Proceedings on July 17, 2002, in Case No. CR-00-1882 at 45-46.

recording was being played only to impeach Mr. Zabroski.[113]  Mr. Armijo's trial attorney did not request that a written limiting instruction for the tape-recorded statement be given to the jury.

62.     Applying the *Strickland* standard, the Court finds that this claim lacks merit for a number of reasons.  First, Plaintiff has made no showing that the performance of his trial attorney was deficient.  New Mexico's UJI 14-5009 was a general limiting instruction, for use with material admitted into evidence for a limited purpose.  UJI 14-5009 was not applicable to Travis Zabroski's tape-recorded statement because the tape-recording was not admitted as substantive evidence.  Instead, it was played for impeachment purposes to impeach Mr. Zabroski with his prior inconsistent statements.  Moreover, New Mexico's uniform jury instructions for criminal cases at that time provided that no separate instruction was to be given on considering prior inconsistent statements in determining the credibility of a witness.[114]  Instead, witness credibility was covered by a general

---

[113]The trial judge gave the following oral instruction to the jury:

> THE COURT:    . . .
>
>      In this case, the attorneys have stipulated that this is a tape recording of Mr. Zabroski of a statement given May 31st of 2000; that it is his voice answering the questions that are being answered.  . . .
>
> . . .
>
>      This will not go to the jury room with you.  It is being played as a prior inconsistent statement and it goes to the credibility of Mr. Zabroski and his testimony when he testified before you.
>
> . . .
>
> THE COURT: . . . As I indicated to you, the tape would only be relevant for impeachment of Mr. Zabroski's credibility when he testified here earlier.  Well, some of the stuff on the tape doesn't have anything to do with what he was asked about when he was on the witness stand, so we're going to go to another part of the tape that would have stuff that would be relevant in terms of other parts of the tape in terms of impeachment.

Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 124-127.

[114]*See* N.M.R.A. Crim. UJI 14-5021 (2002), Use Notes and Committee Commentary (providing that no separate instruction should be given on considering a prior inconsistent statement in determining the credibility of a

(continued...)

credibility instruction, New Mexico Uniform Criminal Jury Instruction No. 14-5020, which was modified slightly to fit the charges against Mr. Armijo and used at his trial.[115] Thus, the performance of Mr. Armijo's attorney was not deficient in failing to request a written limiting instruction that was likely to have been denied. Furthermore, Mr. Armijo has made no showing to overcome the strong presumption that his attorney employed sound trial strategy in failing to request a written limiting instruction for the tape-recorded statement. It is quite possible, given that the trial judge gave a verbal limiting instruction to the jury about the tape-recorded statement of Travis Zabroski, that Mr. Armijo's attorney avoided requesting a written instruction on the same subject because he did not want to emphasize to the jury the content of the tape-recorded statement, which implicated Mr. Armijo. *See Richie v. Mullin*, 417 F.3d 1117, 1133 (10th Cir. 2005) ("Courts must review the strategic choices of counsel with considerable deference because there are many ways to render effective assistance in a particular case. Not only do we defer to strategic decisions, but we begin with the presumption such a strategy existed, that individual choices were guided by an overarching, sound trial strategy[.]")

63. Second, the Court finds that any prejudice to Mr. Armijo resulting from playing the excerpts from the taped statement to the jury was sufficiently tempered because the jury was verbally instructed by the trial judge, prior to the excerpts being played, to consider them only for the limited purpose of impeaching Travis Zabroski with his prior inconsistent statements. In addition, the tape-recorded statement was not admitted into evidence and it was not allowed in the jury room during deliberations.

---

[114](...continued)
witness).

[115]*See* N.M.R.A., Crim. UJI 14-5020 (2002); *see also Record Proper* at RP0000207, Instruction No. 22 given to the jury.

### h.   *Failure to Object to Unspecified Jury Instruction*

64.     Mr. Armijo claims that his attorney's failure to object to an unspecified jury instruction was ineffective assistance of counsel.[116]  In his Application, Mr. Armijo fails to identify the instruction or describe its subject matter, and fails to explain how an objection to the instruction by his attorney would have changed the outcome of the trial.  Mr. Armijo only describes the instruction as having been "most important," and as having been "improper and wrongfully altered."[117]   This claim, which is conclusory and unsupported, should be denied.  *See Moore v. Gibson*, 195 F.3d 1152, 1180 n.17 (10th Cir. 1999) (court does not consider "unsupported and undeveloped issues" in a federal habeas proceeding).

65.     It is possible that this claim refers to Instruction No. 17, for liability as an aider and abettor, which Mr. Armijo described in his state habeas petition as being, "[t]he most important instruction that was used for my conviction[.]"[118]  In his state habeas petition, Mr. Armijo argued that his attorney was ineffective because he failed to object to this instruction as having been

---

[116]*See* Application (*Doc. 1*) at page numbered 14 in the Court's CM-ECF electronic docketing system.

[117]*Id.*

[118]*See* Answer (*Doc. 12*), Exhibit U, at page numbered 14 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.  As given to the jury, Instruction No. 17 stated:

> The defendant may be found guilty of the crimes of Attempted First Degree or Attempted Second Degree Murder, Armed Robbery, Aggravated Assault and/or Tampering with Evidence, even though the defendant did not do the acts constituting the crime(s), if the State proves to your satisfaction beyond a reasonable doubt that:
>
> 1. The defendant intended that the crimes of Attempted First Degree or Attempted Second Degree Murder, Armed Robbery, Aggravated Assault and/or Tampering with Evidence be committed;
>
> 2. The crime(s) was/were committed;
>
> 3. The defendant helped, encouraged or caused the crime(s) to be committed.

*R.* at RP 0000202.

improperly altered from New Mexico Criminal Uniform Jury Instruction 14-2822 (hereinafter, "UJI 14-2822") to apply to the attempted first and second degree murder charges against Mr. Armijo.[119] If this is Mr. Armijo's claim in this proceeding, the Court finds no merit to the claim.

66.     A use note to the 2000 version of UJI 14-2822, on which Instruction No. 17 was based, does state: "This instruction should not be used for attempt or felony murder."[120]   The committee commentary to UJI 14-2822 similarly states: "This instruction sets out the theory of liability as an aider and abettor for crimes other than attempt or felony murder."[121]   However, although Mr. Armijo was indicted and tried in his state criminal case on charges of attempted first and second degree murder, he was acquitted of those charges by the jury.[122] Thus, Mr. Armijo cannot establish that he was prejudiced by the alteration of Instruction No. 17, to include the crimes of attempted first and second degree murder, because he was not convicted of those crimes. Therefore, he cannot satisfy the second prong of the *Strickland* standard with regard to this claim which requires a showing of prejudice.

### 3. *Prosecutorial Misconduct*

67.     Mr. Armijo contends that the prosecutor in his state criminal case engaged in unconstitutional prosecutorial misconduct by: (a) "failing to make or disclose a new statement by [an unidentified] witness who changed his story"; (b) failing to interview or call any medical, physical or mental examiners regarding unspecified injuries, the credibility of an unidentified

---

[119]*See* Answer (*Doc. 12*), Exhibit U, at page numbered 14 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[120]*See* N.M.R.A. Crim. UJI 14-2822, Use Note, footnote 1 (2002).

[121]*Id.*, Committee commentary.

[122]Mr. Armijo was charged with attempted first and second degree murder in Count 1 of his indictment.  *See Record Proper* at RP0000001.  He was acquitted of those charges by the jury in a separate verdict for Count 1.  *Id.* at RP0000217.

witness, and to explain unspecified medical records; (c) leading unidentified witnesses on direct examination to use hearsay which should have been inadmissible; (d) asking his alleged accomplice leading questions at trial that were inaccurate, misleading, confusing, irrelevant and emphasized what the accomplice told people, not what actually happened; (e) asking his alleged accomplice what charges he plead to and what his sentence was which ruined his credibility; and (f) making unspecified improper remarks, offering unspecified personal opinions and engaging in unspecified improper vouching during opening statement and closing argument which prejudiced Mr. Armijo.[123] Mr. Armijo asserted a similar claim in his state habeas proceeding which was summarily denied.[124]

68.    The Court finds all of the foregoing claims too vague and conclusory for consideration in this proceeding, except Mr. Armijo's claims regarding his alleged accomplice, Travis Zabroski.  The Court construes those claims as relating to the testimony of Mr. Zabroski who was called as a prosecution witness at trial.

69.    For prosecutorial misconduct to rise to the level entitling a petitioner to federal habeas relief, it must either have violated a specific constitutional right, or "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Because Mr. Armijo does not assert the violation of any constitutional right other than due process, the Court construes his prosecutorial misconduct claims regarding Travis Zabroski as claims that prosecutorial misconduct resulted in a denial of due process.

70.    Travis Zabroski was called as a prosecution witness at trial.  After he responded to questions on direct examination with answers that were evasive and answers that he did not remember events on the night of the shooting incident and at other times, the prosecutor asked

---

[123]*See* Application (*Doc. 1*) at pages numbered 7and 14 in the Court's CM-ECF electronic docketing system.

[124]*See* Answer (*Doc. 12*), Exhibit U, at pages numbered 19-20 of *Doc. 12-6* the Court's CM-ECF electronic docketing system, and Exhibit V, at page numbered 24 in *Doc. 12-6* of the Court's CM-ECF electronic docketing system.

permission to treat him as a hostile witness which the trial judge granted.[125]   The trial judge specifically stated that the prosecutor could ask Mr. Zabroski leading questions.[126]  Mr. Zabroski then testified on continued direct and re-direct about matters including the amount of time he had spent in prison, events occurring on the night of the shooting, a statement he gave to police after the shooting incident, and his past dealings with the victim David Brown.[127]

71.     The Court concludes that the prosecutor's use of leading questions while examining Travis Zabroski as a hostile witness did not result in a violation of the due process standard set forth in *Donnelly*.  The *Record* clearly shows that Travis Zabroski was a hostile witness, which allowed him to be asked leading questions under New Mexico's Rules of Evidence.  *See* N.M.R.A., 11-611(C) (1993) ("When a party calls a hostile witness, . . . interrogation may be by leading question.").  The state court's determination that Travis Zabroski was a hostile witness, and the prosecutor's use of leading questions to interrogate him, did not amount to prosecutorial misconduct and the prosecutor's leading questions in these circumstances were not so prejudicial as to violate Mr. Armijo's right to due process.  Consequently, the Court finds no merit to this claim.

72.     Mr. Armijo's claim of prosecutorial misconduct alleging that the prosecutor improperly questioned Travis Zabroski about his plea and sentence, is also without merit.  A review of the *Record* shows that it was Mr. Armijo's defense attorney who initiated the questioning of Mr. Zabroski about his plea and sentence on cross-examination and the prosecutor only briefly referred to Mr. Zabroski's plea and sentence on re-direct examination.[128]

---

[125]*See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 94-99.

[126]*Id.* at 99.

[127]*Id.* at 99-101, 103-109, 119-120.

[128]*See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 117-120.

### 4. Out-of-Court Statement of Travis Zabroski

73.     Mr. Armijo contends that the trial court erred by allowing the jury to hear the taped, out-of-court statement by witness Travis Zabroski.[129]  Mr. Armijo appears to contend this was error because the probative value of the taped statement was outweighed by its prejudicial effect and because the taped statement was used improperly to impeach Mr. Zabroski with his prior inconsistent statements.[130]  Mr. Armijo appears to contend that the playing of the tape to the jury violated his due process rights and his rights under the Confrontation Clause of the Sixth Amendment.[131]  Mr. Armijo made a similar claim in his state habeas petition which was summarily denied.[132]

74.     As noted above, excerpts from the tape-recorded statement of Travis Zabroski were played to the jury to impeach Mr. Zabroski with his prior inconsistent statements after he testified that he did not remember giving the statement and testified to a version of events related to the shooting incident that differed from what he said in the taped statement.[133]  The tape-recording of the statement was admitted only for impeachment purposes and it did not go into the jury room during deliberations.[134]  The taped statement is not part of the *Record* in this proceeding.  During his examination at trial, Travis Zabroski testified regarding the subject matter of the tape and Mr. Armijo's attorney questioned him regarding the subject matter of the tape.[135]

---

[129]*See* Application (*Doc. 1*) at page numbered 9 in the Court's CM-ECF electronic docketing system.

[130]*Id.*

[131]*Id.*

[132]*See* Answer (*Doc. 12*), Exhibit U, at page numbered 21 of *Doc. 12-6*, and Exhibit V, at page numbered 24 of *Doc. 12-6*, in the Court's CM-ECF electronic docketing system.

[133]*See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 95-109, 124-127.

[134]*Id.* at 124-125; *see also* Transcript of Proceedings on July 17, 2002, in Case No. CR-00-1882 at 45-46.

[135]*See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 94-119.

75.     The Court finds that Mr. Armijo has made no showing that the playing of Travis Zabroski's taped statement to impeach him at trial and the admission of the taped statement for impeachment purposes warrant habeas relief for violation of his due process rights or his rights under the confrontation clause of the Sixth Amendment.

76.     Review is not available in this federal habeas proceeding to correct evidentiary errors under state law but, instead, is limited to review for violations of federal constitutional rights.  *See Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999), citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Having reviewed the *Record*, the Court finds that Mr. Armijo has failed to demonstrate that the admission of Travis Zabroski's taped statement for impeachment purposes rendered his trial proceedings fundamentally unfair, thereby violating his due process rights.  *See Payne v. Tennessee*, 501 U.S. 808, 825 (1991) ("[T]he Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair[.]") (citing *Darden v. Wainwright*, 477 U.S. 168, 179-83 (1986)).  The Tenth Circuit has held that the foregoing standard is satisfied only if "the probative value of [the challenged] evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law." *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (internal quotation marks and citations omitted).  Here, the taped statement of Travis Zabroski was played for the limited purpose of impeaching him with his prior inconsistent statements, after he testified at trial that he did not remember giving the statement and gave inconsistent testimony regarding events surrounding the shooting.  To mitigate any prejudice, the trial judge gave a limiting instruction to the jury before the tape was played, instructing the jury that it was only being played as a prior inconsistent statement going to Mr. Zabroski's credibility, and the trial judge did not admit the taped statement as substantive evidence or allow it into the jury room during deliberations.  Given the probative value

of the taped statement for impeachment purposes, the nature of the limiting instruction given by the

trial judge, the limited use of the tape-recorded statement for impeachment purposes, and the wealth

of other evidence supporting Mr. Armijo's convictions, the Court finds that the use of the tape-

recorded statement for impeachment purposes was not so unduly prejudicial as to render

Mr. Armijo's trial fundamentally unfair.

77.     The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him[.]"  U.S. Const., amend. VI.  The Confrontation Clause does not prohibit the admission of an

out-of-court statement if the declarant of the statement appears at trial for cross-examination, and

it does not preclude the use of testimonial statements, such as statements made to law enforcement

officers in the course of an investigation, for purposes other than establishing the truth of the matter

asserted.  *See Crawford v. Washington*, 541 U.S. 36, 52 and 59 (2004).  In Mr. Armijo's case, the

declarant of the testimonial statement, Travis Zabroski, appeared at trial and was cross-examined

by Mr. Armijo's attorney.  He was impeached with the taped statement that he gave to the police

during their investigation and the use of the tape was limited to impeaching his credibility.

Consequently, the Court finds no basis for a Confrontation Clause violation in the impeachment use

of Mr. Zabroski's taped statement at trial.

### 5.  Insufficient Evidence of Conspiracy to Commit Armed Robbery

78.     Mr. Armijo asserts in conclusory fashion that the evidence at trial was insufficient

to convict him of the charge of conspiracy to commit armed robbery.[136]  He contends that the

prosecution failed to prove every element of this charge beyond a reasonable doubt, thereby

---

[136]*See* Application (*Doc. 1*) at page numbered 15 in the Court's CM-ECF electronic docketing system.

violating his right to due process.[137]  Mr. Armijo asserted this claim in his state habeas petition which was summarily denied.[138]

79.      In reviewing a federal habeas claim for sufficiency of the evidence to convict, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"      *Scrivner v. Tansy*, 68 F.3d 1234, 1239 (10th Cir. 1995) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).   "'[T]o be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt.'"   *Kelly v. Roberts*, 998 F.2d 802, 808 (10th Cir. 1993) (quoting *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir. 1990).  This standard is consistent with the state court's decision in Mr. Armijo's state habeas proceeding, and a review of the *Record* shows that sufficient evidence was presented at trial to convict Mr. Armijo of conspiracy to commit armed robbery.

80.      Under New Mexico law applicable to Mr. Armijo's conviction, N.M.S.A. 1978, § 30-28-2, sets forth the elements of conspiracy as "knowingly combining with another for the purpose of committing a felony within or without this state."[139]  N.M.S.A. 1978, § 30-16-2, set forth the elements of robbery as "the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence."   The commission of robbery "while armed with a deadly weapon," was punishable, at the time Mr. Armijo committed this crime, for the first offense, as a second degree felony and, for the second and subsequent offenses, as a first degree felony.  *Id.*  "Deadly weapon" was then defined in New Mexico's criminal

---

[137]*Id.*

[138]*See* Answer (*Doc. 12*), Exhibit U and Exhibit V, at pages numbered 9 and 24, respectively, of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[139]The Court notes that under New Mexico law, conspiracy may be proved by circumstantial evidence.  *See State v. Chavez*, 661 P.2d 887, 889 (N.M. 1983).

statutes as including "any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm . . . [.]"  N.M.S.A. 1978, §30-1-12 (B).  Sufficiency of the evidence claims are evaluated with specific reference to the substantive elements of the criminal offense as defined by state law.  *Kelly v. Roberts*, 998 F.2d at 808.  Here, evidence meeting the substantive elements of the crime of conspiracy to commit armed robbery, as defined by New Mexico law, was presented at trial.  A rational trier of fact could have concluded that Mr. Armijo conspired to commit armed robbery of David Brown.  Accordingly, the Court finds no merit to this claim.[140]

81.   Raymond Zabroski, the father of Travis Zabroski, testified on direct examination that Mr. Armijo and Travis Zabroski were at Raymond's Zabroski's home on the evening of May 30, 2000, before David Brown was shot, and that they left his home that evening about 10:00 or 10:15.[141]  With reference to Mr. Brown and what happened to him that night, Raymond Zabroski testified that he "knew a little bit about it before, what was happening.  I knew the two boys were going to go take from him what he had already taken from them."[142]  In the following exchange with the prosecutor, Raymond Zabroski confirmed that he was told by Travis, before Travis left home that night with Mr. Armijo, that Travis and Mr. Armijo were going to take money and marijuana from Mr. Brown:

Q.    Okay. And that was marijuana?

A.    Money and marijuana.

Q.    Okay.  And that's what Travis told you?

---

[140]At trial, during argument on his motion for directed verdict on other charges, Mr. Armijo's attorney conceded that viewing the evidence in the light most favorable to the prosecution, the state may have met its burden of presenting sufficient evidence to convict Mr. Armijo of conspiracy to commit armed robbery.  *See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 137.

[141]*See* Transcript of Proceedings on July 16, 2002, in Case No. CR-00-1882 at 79-81.

[142]*Id.* at 84.

A.      Yes.

Q.      He and Chris were going to take from Brown what Brown had already taken from

them?

A.      Yes.[143]

Raymond Zabroski re-affirmed this testimony in the following exchange while being cross-

examined by Mr. Armijo's defense attorney:

Q.      Okay.  Travis told you that they were going to go get back from Brown that which

Brown took from them, correct?

A.      Yeah.

Q.      Who is "they"?

A.      Chris and Travis.

Q.      Okay.  What did you take that to mean, sir?

A.      They were going to go get their money and the marijuana that he had stolen from

them.

---

[143]*Id.*  Under the New Mexico Rules of Evidence, N.M.R.A. 1978, 11-801(D)(2), these statements made by
Travis Zabroski to his father before David Brown was shot were not hearsay under the exception for statements offered
against a party which are "statement[s] by a co-conspirator of a party during the course and in furtherance of the
conspiracy."

Q.      "He" being Brown?

A.      "He" being David Brown.[144]

82.     Travis Zabroski testified at trial that David Brown had robbed him of money and marijuana.[145]  Travis testified that he intended to take David Brown's marijuana without paying for it because David Brown had "ripped [him] off."[146]  Although Travis gave conflicting testimony about Mr. Armijo's proximity to David Brown during the actual meeting with him on the night he was shot, Travis acknowledged during his testimony that he and Mr. Armijo drove together to meet David Brown that night and also acknowledged that Mr. Armijo was in the vicinity when Mr. Brown was shot.[147]  Additionally, Travis testified that he brought a gun to the meeting with David Brown.[148]

83.     David Brown testified at trial that Mr. Armijo was with Travis Zabroski the night Mr. Brown was shot.[149]  He testified that Mr. Armijo stood by the driver's side of Mr. Brown's pickup while Travis Zabroski sat in the passenger seat, talking about buying and selling marijuana.[150]  Mr. Brown testified that Mr. Armijo then hit him in the head with the butt of a gun.[151]

84.     Mr. Armijo also testified at trial.  He testified that on evening of May 30, 2000, he went to Travis Zabroski's house and arrived about 9:30 p.m.[152]  He testified that he and Travis Zabroski were selling marijuana and that he had bought marijuana from David Brown ten or

---

[144]*Id.* at 89.

[145]*Id.* at 105-106.

[146]*Id.* at 113.

[147]*Id.* at 100-101, 108-112, 114-116.

[148]*Id.* at 112.

[149]*Id.* at 128.

[150]*Id.* at 132.

[151]*Id.* at 133-134.

[152]*See* Transcript of Proceedings on July 17, 2002, in Case No. CR-00-1882 at 3-5.

twenty times before.[153]  Mr. Armijo testified that he, Travis and Matthew Farris went to meet David Brown in an alley and, that after parking their car, Mr. Armijo and Travis walked into the alley and talked about who Travis was going to sell marijuana to until David Brown drove up in his pickup.[154]  Mr. Armijo testified that he talked to David Brown and shook his hand, and then Travis and Mr. Brown began looking at marijuana and arguing about the price.[155]  Mr. Armijo testified that he started walking away when he heard a gunshot.[156]  Mr. Armijo testified that he went to Travis Zabroski's apartment that night thinking it was going to be a drug deal.[157]  Additionally, on cross-examination, he testified that it was possible that he called David Brown the night of the shooting incident; that he was involved in selling drugs with Travis; and that he knew Travis had a gun.[158]

85.    Viewing this evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded that Mr. Armijo conspired with Travis Zabroski to rob David Brown of his marijuana and money while armed with a deadly weapon, *i.e.*, a gun.

### 6. Double Jeopardy - Armed Robbery and Firearm Enhancement

86.    Mr. Armijo contends that his right to be free of double jeopardy under the Fifth Amendment was violated because a required element of the armed robbery offense, being armed with a firearm, was used to enhance his sentence for that offense with a firearm enhancement,

---

[153]*Id.* at 5.

[154]*Id.* at 5-8.

[155]*Id* at 9.

[156]*Id.* at 9-10.

[157]*Id.* at 14.

[158]*Id.* at 16-19.

resulting in multiple punishments for the same offense.[159]  Mr. Armijo brought a similar claim in his state habeas petition which was summarily denied.[160]  Given the allegations in Mr. Armijo's state habeas petition, this appears to be a claim that double jeopardy was violated because the jury found him guilty of armed robbery committed with a firearm and his sentence for armed robbery was enhanced based on the jury's separate finding that a firearm was used in the commission of the armed robbery.[161]  This was the only issue raised in Mr. Armijo's petition for writ of certiorari seeking review of the denial of his state habeas petition on which the New Mexico Supreme Court requested briefing.[162]  As noted above, the New Mexico Supreme Court summarily denied Mr. Armijo's petition for writ of certiorari.[163]

87.   As a federal constitutional matter, the Double Jeopardy Clause of the Fifth Amendment historically has been found "inapplicable to sentencing proceedings . . . because the determinations at issue do not place a defendant in jeopardy for an 'offense.'" *Monge v. California*, 524 U.S. 721, 728 (1998), citing *Nichols v. United States*, 511 U.S. 738, 747 (1994).  However, even if the Double Jeopardy Clause is deemed applicable to Mr. Armijo's claim regarding the firearm enhancement for his armed robbery conviction, the Court finds no legal merit to this claim.

88.   The Double Jeopardy Clause, as applied to the states through the Fourteenth Amendment, protects, *inter alia*, against multiple punishments for the same offense.

---

[159]*See* Application (*Doc. 1*) at page numbered 16 in the Court's CM-ECF electronic docketing system.

[160]*See* Answer (*Doc. 12*), Exhibits U and  V, at pages numbered 11 and 24, respectively, of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[161]*See* Answer (*Doc. 12*), Exhibit U at page numbered 11 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system; *see also* Record Proper at RP0000193, RP0000204-205, RP0000218-219.

[162]*See* Answer (*Doc. 12*), Exhibit X at page numbered 1 of *Doc. 12-8* in the Court's CM-ECF electronic docketing system.

[163]*See* Answer (*Doc. 12*), Exhibit Z at page numbered 8 of *Doc. 12-8* in the Court's CM-ECF electronic docketing system.

*North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794, 803 (1989).  However, this protection is limited to "ensur[ing] that the sentencing discretion of courts is confined to the limits established by the legislature" because it is the legislature that has "the substantive power to prescribe crimes and determine punishments." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  "In assessing whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, we are bound by a state court's determination of the legislature's intent." *Birr v. Shillinger*, 894 F.2d 1160, 1161 (10th Cir. 1990); *see also Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.")  When a state legislature expressly authorizes cumulative punishment under two different statutes, "a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."  *Id.* at 368-69.

89.    In this case, after briefing on the merits in Mr. Armijo's post-conviction petition for a writ of certiorari, the New Mexico Supreme Court denied him relief.[164]  This was consistent with the New Mexico Supreme Court's decision in *State v. Griffin*, 866 P.2d 1156, 1163-64 (N.M. 1993), that the New Mexico Legislature clearly intended to punish a defendant convicted of armed robbery with a firearm enhancement when a firearm was used in the commission of the armed robbery.  In that case, the New Mexico Supreme Court specifically held that a firearm enhancement in these circumstances did not implicate double jeopardy because New Mexico's firearm enhancement statute, N.M.S.A 1978, § 31-18-16(A), which has not appreciably changed since *State v. Griffin* was decided, expressed clear legislative intent that punishment be increased when a firearm was used

---

[164]*See* Answer (*Doc. 12*), Exhibit Z, at page numbered 8 of *Doc. 12-8* in the Court's CM-ECF electronic docketing system.

in a robbery.[165]  *Id.* at 1164. Because the New Mexico state courts have decided that the legislature intended that punishment for armed robbery be increased with a firearm enhancement when a firearm was used in the commission of the robbery, this Court must defer to that determination.  *See Birr v. Shillinger*, 894 F.2d at 1161 ("Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination.").  Therefore, the Court concludes that Mr. Armijo is not entitled to federal habeas relief as to this claim.

### 7. Double Jeopardy - Aggravated Assault With a Deadly Weapon and Firearm Enhancement

90.    Mr. Armijo also contends that his right to be free of double jeopardy under the Fifth Amendment was violated because a required element of the aggravated assault with a deadly weapon offense, being armed with a firearm, was used to enhance his sentence for that offense with a firearm enhancement, resulting in multiple punishments for the same offense.[166]  Mr. Armijo asserted a similar claim in his state habeas petition which was summarily denied.[167]  Given the allegations in Mr. Armijo's state habeas petition, this appears to be a claim that double jeopardy was violated because the jury found him guilty of aggravated assault committed with a firearm and his sentence was enhanced based on the jury's separate finding that a firearm was used in the commission of the aggravated assault.[168]

---

[165]In its current form, N.M.S.A 1978, § 31-18-16(A) (2008) provides: "When a separate finding of fact by the court or jury shows that a firearm was used in the commission of a noncapital felony, the basic sentence of imprisonment prescribed for the offense in Section 31-18-15 NMSA 1978 shall be increased by one year."

[166]*See* Application (*Doc. 1*) at page numbered 15 in the Court's CM-ECF electronic docketing system.

[167]*See* Answer (*Doc. 12*), Exhibit U and Exhibit V, at pages numbered 10 and 24, respectively, of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[168]*See* Answer (*Doc. 12*), Exhibit U, at page numbered 10 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

91.      As discussed above, in assessing whether a state legislature has intended to prescribe cumulative punishments for a single criminal incident, this Court is bound by a state court's determination of the legislature's intent. *See Birr v. Shillinger*, 894 F.2d at 1161. Here, Mr. Armijo asserted this claim in his state habeas petition and the New Mexico Supreme Court denied certiorari with regard to that petition. Moreover, in 1993, in *State v. Charlton*, 846 P.2d 341, 344-47 (N.M. Ct. App. 1993), *cert. denied*, 844 P. 2d 827 (N.M. 1993), the New Mexico Court of Appeals concluded that the New Mexico Legislature intended to allow the punishment of a defendant convicted of aggravated assault to be increased with a firearm enhancement when a firearm was used in the commission of the aggravated assault. Consequently, the Court of Appeals held that a firearm enhancement in those circumstances, imposed pursuant to N.M.S.A 1978, § 31-18-16(A), which has not changed appreciably since *State v. Charlton* was decided, did not violate the prohibition against double jeopardy. *Id.* at 346-47. Because the New Mexico state courts have determined that the legislature intended that a sentence for aggravated assault could be increased with a firearm enhancement when a firearm was used in the commission of the aggravated assault, this Court must defer to that determination. Therefore, the Court concludes that Mr. Armijo is not entitled to federal habeas relief as to this claim.

### 8. Double Jeopardy - Two Firearm Enhancements

92.      Finally, Mr. Armijo contends that his right to be free of double jeopardy under the Fifth Amendment was violated because he received two separate firearm enhancements - one for his conviction of armed robbery and the other for his conviction of aggravated assault with a deadly weapon - resulting in the imposition of multiple punishments for the same offense.[169] Mr. Armijo

---

[169]*See* Application (*Doc. 1*) at page numbered 15 in the Court's CM-ECF electronic docketing system.

asserted a similar claim in his state habeas petition which was summarily denied.[170]  Based on the allegations in Mr. Armijo's state habeas petition, he appears to be claiming that double jeopardy was violated because the New Mexico Legislature did not intend that multiple firearm enhancements be imposed in the same case, arising out of the same incident.[171]

93.     Under the double jeopardy cases cited previously, the Court finds no legal merit to this claim.  Mr. Armijo was convicted of armed robbery and aggravated assault with a deadly weapon arising out of the attack on David Brown.  The trial court imposed the basic sentence for each crime and enhanced each sentence with a one-year firearm enhancement, for the use of a firearm in the commission of each crime pursuant to N.M.S.A. 1978, Section 31-18-6 (1993).[172] New Mexico's courts, as a matter of statutory interpretation, have rejected the "single transaction" theory of sentencing in the area of firearm enhancements.  *See State v. Espinosa*, 756 P.2d 573, 577-78 (N.M. 1988) (holding that the trial court correctly imposed separate firearm enhancement sentences for each of two crimes instead of imposing a single firearm enhancement sentence for a "unified course of events" ).  In *State v. Espinosa*, the New Mexico Supreme Court cited with approval the holding in *State v. Kendall*, 561 P.2d 935, 943 (N.M. Ct. App. 1977),[173] that, "[i]f the statute punishes for 'use' of a firearm in committing a felony, the punishment is to be applied for each felony committed by using a firearm.").  *State v. Espinosa*, 756 P.2d at 577-78.  The relevant language in New Mexico's firearm enhancement statute has not changed appreciably since *State v. Espinosa* was decided in 1988, and the statute still punishes for the use of a firearm in the

---

[170]*See* Answer (*Doc. 12*), Exhibit U, at page numbered 12, and Exhibit V, at page numbered 24, respectively, of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[171]*See* Answer (*Doc. 12*), Exhibit U, at page numbered 12 of *Doc. 12-6* in the Court's CM-ECF electronic docketing system.

[172]*See* Answer (*Doc. 12*), Exhibit C, at pages numbered 10-11 of *Doc. 12-2* of the Court's CM-ECF electronic docketing system.

[173]*State v. Kendall* was reversed in part by the New Mexico Supreme Court, on other grounds, in *Kendall v. State of New Mexico*, 561 P.2d 464 (N.M. 1977).

commission of a noncapital felony.  Accordingly, because New Mexico's courts have rejected Plaintiff's contention that when multiple crimes are committed with a firearm during the same transaction the firearm enhancement statute should be applied to only one of the crimes, this Court is bound by that interpretation of legislative intent and this claim must be denied.

### C. Conclusion

94.     For the foregoing reasons, the Court finds that habeas relief is not warranted on Mr. Armijo's claims.  Mr. Armijo has failed to establish that the adjudication of his claims on the merits in the State court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that is was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[174]   Therefore, the Court recommends that Mr. Armijo's Application be denied and that this case be dismissed with prejudice.

### RECOMMENDED DISPOSITION

The Court recommends that Mr. Armijo's ***Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody*** (*Doc. 1*) be **DENIED** as without merit, and that this case be **DISMISSED WITH PREJUDICE**.


_Lourdes A. Martinez_
**LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**

---

[174]*See* 28 U.S.C. §§ 2254(d)(1)-(2).